The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHERLY ALOFF, beneficiary to life insurance benefits of Paul M Berliner, and KIMBERLY PULIDO, beneficiary to life insurance benefits of Darrin Towe,

Plaintiffs,

v.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; CLAY LACY AVIATION, INC.,

Defendants.

No. 25-cv-05834-DGE

**MOTION TO DISMISS AMENDED COMPLAINT**

NOTE ON MOTION CALENDAR: April 14, 2026

Defendant The Prudential Insurance Company of America ("Prudential"), by and through its counsel and pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), respectfully requests that the Court dismiss Plaintiffs' claims in their entirety with prejudice. In supports of its motion, Prudential states as follows:

**Introduction**

The Court should dismiss Plaintiffs' claims because they seek insurance benefits to which Plaintiffs are not entitled under the terms of the Clay Lacy Aviation Inc. Life Insurance Plan ("Plan") or any statute. Plaintiffs are the respective beneficiaries of two pilots—formerly employed by Defendant Clay Lacy Aviation—who tragically perished in an airplane crash in February 2024. Plaintiffs sought and received basic life insurance benefits under the Plan. They also sought



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

accidental death & dismemberment ("AD&D") benefits. However, the Plan specifically excludes from its AD&D coverage any loss incurred by a person "performing as a pilot … of any aircraft." Accordingly, Plaintiffs' claim under ERISA to recover "benefits due to [them] under the terms of [the] plan" fails because the express terms of the Plan reveal that no benefits are due.

Plaintiffs' claims for breach of fiduciary duty fare no better. Prudential was not a Plan fiduciary for the vast majority of the omissions alleged. And even if Prudential were subject to fiduciary standards, Plaintiffs do not plausibly allege a breach. Instead, Plaintiffs' allegations show that Prudential correctly applied the terms of the Plan and, contrary to Plaintiffs' contention, the AD&D coverage was not illusory, it in fact offered benefits for a wide range of accidental losses—including certain aviation accidents—just not for the tragedy at issue in this case.

The Court should dismiss the Amended Complaint in its entirety.

## Relevant Factual Background

### I. The Aviation Incident

Plaintiffs are the respective Plan beneficiaries of Paul Berliner and Darrin Towe. (Amended Complaint (ECF No. 32) ¶¶ 3.1-3.3). Berliner and Towe were employed as pilots for Defendant Clay Lacy Aviation. (Am. Compl. ¶¶ 3.1-3.4). On February 7, 2024, Berliner and Towe (Captain and First Officer respectively) were operating a Hawker 900XP airplane—owned by Vici Aviation, LLC, and operated by Clay Lacy Aviation—from Grand Junction, Colorado (GJT) to Gig Harbor, Washington. (Am. Compl. ¶¶ 4.16-4.17; Ex. 1, NTSB Investigation Report at 5). Approximately 10 minutes after departure, the plane crashed in Westwater, Utah following a rapid descent in a pattern resembling the shape of a corkscrew. (Am. Compl. ¶ 4.18; Ex. 1, NTSB Report at 5-6). Both Berliner and Towe died on impact. (Am. Compl. ¶ 4.19).

### II. The Plan

The Plan is an insured welfare benefit plan governed by ERISA. Life insurance and Accidental Death and Dismemberment ("AD&D") benefits are provided through a group insurance contract which incorporates insurance booklets stating the terms of coverage. Ex. 2,



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

Declaration of Beth Tang Sing; Am. Compl. ¶ 4.2; *see also* 29 U.S.C. § 1002(1) (defining "welfare plan" to be "any plan, fund, or program … established or maintained by an employer … for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise … benefits in the event of sickness, accident, disability, death or unemployment"); 29 U.S.C. § 1003 (describing ERISA's expansive coverage of all employee benefit plans). Defendant Prudential insures the Plan benefits through the group insurance contract, which was issued to Clay Lacy. (Ex. 2; Sing Decl. ¶¶ 3-5; Ex. 3, Plan, at PRU 077212-003709 ("PRU")-000092-93).

The Plan offers a variety of life insurance benefits. (*See generally* Plan at PRU-000045-77). Among these benefits are basic employee term life coverage and accidental death and dismemberment coverage. (Plan at PRU-000045-48, 000063-77). Though both coverages provide benefits for certain losses of life, the coverages are not coterminous. The AD&D coverage (unlike the basic life coverage) provides benefits for certain accidental death and certain nonfatal accidental injuries, but contains a list of exclusions where benefits are not payable. (Am. Compl. ¶¶ 4.3-4.4; Plan at PRU-000063-65). One exclusion, relevant here, is that AD&D benefits are not payable where an otherwise-covered injury arises from the insured's "performing as a pilot or a crew member of any aircraft." (Am. Compl. ¶¶ 4.4-4.6; Plan at PRU-000065, AD&D Coverage § B(8)(b)).[1] Plaintiff alleges that aviation companies other than Clay Lacy do not "purchase life insurance policies for their aviation employees" that contain "such an aviation exclusion." (Am. Compl. ¶ 4.8). But there is no dispute that Clay Lacy bought coverage subject to the aviation exclusion, or that the exclusion is lawful under applicable state law. Plaintiffs further allege that

[1] The full exclusion at issue is set forth as follows:
(8) Travel or flight in any vehicle used for aerial navigation. This includes getting in, out, on or off any such vehicle. This (8) applies only if:

> (a) the person is riding as a passenger in any aircraft not intended or licensed for the transportation of passengers;
> (b) the person is performing as a pilot or a crew member of any aircraft; or
> (c) you are riding as a passenger in an aircraft owned, leased or operated by your Employer.



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

Clay Lacy represented to Towe, Berliner, and the public that it offered pilots "'fully paid' benefits including 'life insurance,'" but that this representation was false or misleading because of the AD&D exclusion. (Am. Compl. ¶¶ 4.11-4.14). However, the statement clearly is true, as the Plan's basic life coverage provides a benefit in the case of death, and it does not include the pilot/aviation exclusion applicable to AD&D benefits. (Plan at PRU-000045-48).

## III. Plaintiffs' AD&D Claims.

Following the plane crash, Plaintiffs filed benefit claims with Prudential. (Am. Compl. ¶¶ 4.21, 4.25). Prudential denied both AD&D claims[2] based on the Plan's exclusion for losses caused by the insured's "performing as a pilot or crew member of any aircraft." (Am. Compl. ¶¶ 4.22-4.24, 4.26-4.28). It likewise denied Plaintiffs' appeals on the same grounds in March and May 2025. (Am. Compl. ¶¶ 4.24-4.25, 4.27-4.28). Plaintiffs allege that the exclusion does not apply for "legal and equitable reasons," (Am. Compl. ¶ 4.29), but concede that both decedents fall within the terms of the exclusion, (Am. Compl. ¶¶ 4.10, 4.16-4.17).

## IV. Procedural History.

Plaintiffs filed this action on September 18, 2025. (ECF No. 1). On February 17, 2026, the Court granted Defendants' motions to dismiss, but granted Plaintiffs leave to amend as to their claims for benefits and claims for breach of fiduciary duty. (ECF No. 31). On March 3, 2026, Plaintiffs filed their Amended Complaint. (ECF No. 32). The Amended Complaint assets two causes of action. Count One alleges Plaintiffs are entitled to AD&D benefits on the theory that the aviation exclusion renders the AD&D coverage "illusory, unconscionable, and objectionable on equitable, contractual, and public policy grounds." (Am. Compl. ¶ 5.6). Plaintiffs do not contend that they are entitled to benefits if the aviation exclusion is enforced as written. Count Two alleges Defendants breached their fiduciary duties by "negotiation, issuance, and continued renewal of a life insurance policy that could never" offer AD&D coverage to pilots employed by an aviation

[2] Plaintiffs do *not* allege that Prudential denied basic life insurance benefits.



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

company. (Am. Compl. ¶ 5.13). Specifically, Plaintiffs further allege that Clay Lacy falsely or misleadingly represented that it offered "fully paid … life insurance." (Am. Compl. ¶ 5.15). And they allege Prudential breached its fiduciary duties by collecting premiums for a policy allegedly knowing that (1) the policy differed from other aviation employer policies and (2) Clay Lacy pilots could never benefit from the policy coverage in the event of a Clay Lacy airplane crash. (Am. Compl. ¶ 5.16).

## Argument

### I. Standard of Review

Motions to dismiss brought under Fed. R. Civ. P. 12(b)(6) are an "important mechanism for weeding out meritless claims" in ERISA cases. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). To survive a Fed. R. Civ. P. 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While courts must accept facts alleged in the complaint, they need not accept legal conclusions. *Western Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). In fact, conclusory allegations or legal conclusions masquerading as factual allegations will not defeat a motion to dismiss. *Id.*; *see also Iqbal*, 556 U.S. at 678-79 (noting that "the doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions."). The Court also need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

The Court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-908



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

(9th Cir. 2003) (citations omitted); *see also Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169-60 (9th Cir. 2012) ("Our relevant case law has recognized consistently that the district court may, but is not required to incorporate documents by reference." (citations omitted)). Fundamentally, courts are permitted to consider ERISA plan documents, even on a motion to dismiss, when the plaintiff refers to them in the complaint. *See Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 943 n.1 (9th Cir. 2008).

**II. Plaintiffs' ERISA claims fail.**

**A. Plaintiffs' claim for benefits fails because the Plan terms preclude it.**

Plaintiffs fail to state a claim for benefits because the Plan concededly forecloses the relief they seek. ERISA permits a beneficiary to bring an action "to recover benefits *due … under the terms of his plan* … or to clarify his rights to future benefits *under the terms of the plan*." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). Implicit in the phrase "under the terms of the plan" is that to state a claim for benefits, a plaintiff must plausibly allege entitlement to further benefits under the plan terms. *Korman v. ILWU-PMA Claims Off.*, No. 218CV07516SVWJPR, 2019 WL 1324021, at *12 (C.D. Cal. Mar. 19, 2019) ("because Plaintiff has not alleged how it is entitled to the particular benefits it seeks under the ERISA Plan provisions, the Complaints fail to set forth a plausible claim for relief under ERISA"); *Brand Tarzana Surgical Inst., Inc. v. Blue Cross Blue Shield of Illinois*, No. CV 18-8443 DSF (ASX), 2019 WL 12338413, at *1 (C.D. Cal. Apr. 22, 2019) (collecting cases dismissing ERISA claims for failure to point to plan language entitling the plaintiffs to benefits); *see also CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011) (noting that § 502(a)(1)(B) "speaks of '*enforc[ing]*' the 'terms of the plan,'" such that a court cannot grant relief under that section by changing the plan terms) (emphasis in original).

Here, however, Plaintiffs concede that the Plan as written does not authorize AD&D benefits to be paid when an insured suffers a loss while performing as an airplane pilot. Plaintiffs admit that the Plan contains an aviation exclusion such that no benefits are payable for losses arising out of "[t]ravel or flight in any vehicle used for aerial navigation" when the participant "is



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

performing as a pilot or crew member." (Am. Compl. ¶¶ 4.6-4.7; *see also* Plan at PRU-000065) And Plaintiffs expressly plead that both decedents were operating as airplane pilots in an airplane during the accident in question. (Am. Compl. ¶¶ 4.16-4.19). Thus, the Plan does not entitle Plaintiffs to AD&D benefits.[3]

Despite this, Plaintiffs allege (Am. Compl. ¶ 5.6) that the aviation exclusion renders the AD&D coverage "illusory, unconscionable, and objectionable on equitable, contractual, and public policy grounds." But Plaintiffs identify no Plan term purporting to make the exclusion inapplicable. And *Amara* requires that a claim for benefits be decided based on the Plan as written, not as Plaintiffs might wish it to have been written. 563 U.S. at 436. Beyond this, there is no basis in law for Plaintiff's position that the Court can disregard unambiguous Plan terms based on contract defenses imported via federal common law. To the contrary, the Court may not disregard such unambiguous terms. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) (ERISA does not "mandate what kind of benefits employers must provide if they choose to have such a plan"); *Peterson v. Am. Life & Health Ins. Co.*, 48 F.3d 404, 411 (9th Cir. 1995) ("ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court has no authority to draft the substantive content of such plans"); *Noecker v. S. California Lumber Indus. Welfare Fund*, No. CV09-05922 DMG(SSx), 2011 WL 13147419, at *7 (C.D. Cal. Feb. 25, 2011) ("federal court cannot invoke … principles [of unconscionability and public policy] under the guise of federal common law … to regulate" plan contents).

Even if common law defenses were relevant (which they are not), Plaintiffs do not plausibly allege that the AD&D coverage was illusory or unconscionable. Indeed, the Plan covers myriad accidental losses (including non-employment-related aviation losses). *See also infra* § I.B.2. Plaintiffs nevertheless allege (Am. Compl. ¶ 5.16) that the AD&D benefit is illusory and/or unconscionable because "Clay Lacy pilots operating Clay Lacy airplanes … could never benefit

[3] The Plan's term *life insurance* benefits do not have the same exclusion and are not at issue in this case.



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

from this 'coverage'" in the event of a "foreseeable, but unfortunate, crash of a Clay Lacy airplane." Plaintiffs lack a legal basis for their contention that a work-provided AD&D policy is illusory or unconscionable simply because it does not cover all employment hazards. Indeed, California law (the law governing insurance policies issued in Clay Lacy's home state) expressly authorizes exclusions for "acting as pilot or crew in any aircraft." 10 Cal. Code Regs. § 2220.8(a)-(b); *see also* Cal. Ins. Code § 10223 ("[a] blanket life insurance policy may provide that the insurer is not liable, or is liable only in a reduced amount, for losses arising from conditions … [r]elating to aviation").[4] That Plaintiffs think coverage would be a good idea does not impose a legal duty to provide it.

The Plan undisputedly does not offer AD&D benefits for a loss arising from performance as an airplane pilot, so Plaintiffs' claim for benefits fails.

### B. Plaintiffs' fiduciary breach claim fails.

The Court should likewise dismiss Plaintiffs' claim for breach of fiduciary duty (Count Two ). Plaintiffs fail to plausibly allege that Prudential acted as a Plan fiduciary for certain actions, fail to plausibly allege any breaches, and do not plausibly allege co-fiduciary liability.[5]

---

[4] The California statute and regulations permitting aviation exclusions are relevant here both to negate any assertion of unconscionability and because they are laws regulating insurance (many of which are not preempted by ERISA, *see* 29 U.S.C. § 1144(b)(2)(A)).

[5] Plaintiffs do not expressly specify whether they bring Count Two pursuant to 29 U.S.C. § 1132(a)(2) (authorizing claims for "appropriate relief" under 29 U.S.C. § 1109) or 29 U.S.C. § 1132(a)(3) (a catchall provision authorizing claims for appropriate equitable relief based on statutory or plan violations). However, Count Two appears to arise under § 1132(a)(3). Although Count Two cites § 1109, that section concerns relief payable to a plan for losses to that plan (*e.g.*, *id.* (a breaching fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach")). Plaintiffs, however, do not seek any relief payable to the Plan, so their claims are outside § 1109. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) (holding that "the entire text of § [11]09 persuades us that Congress did not intend that section to authorize any relief except for the plan itself" and that § 1109 does not offer "express authority for an award of extracontractual damages to a beneficiary"); *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (plaintiffs "could not proceed under [§ 1132(a)(2)] because that provision, tied to § [11]09, does not provide a remedy for individual beneficiaries"); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 665 (9th Cir. 2008) (plaintiff who "brought an ERISA claim pursuant to 29 U.S.C. § 1109(a) … was acting in a representative capacity by requesting relief on behalf of a legal entity other than himself" and thus could not proceed *pro se*).



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

**1. Plaintiffs do not plausibly allege that Prudential acted as a Plan fiduciary with respect to negotiation, issuance, renewal, or accepting premiums.**

Plaintiffs' fiduciary breach claims fail in principal part because the Complaint does not plausibly allege that Prudential acted as a fiduciary as to most of the actions that Plaintiffs challenge. "In every case charging breach of ERISA fiduciary duty, … the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Under *Pegram*, it is not enough for Prudential to be a fiduciary for one purpose (*e.g.*, deciding claims); it must be a fiduciary as to the specific acts at issue.

As relevant here, a person is an ERISA fiduciary if "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets … or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. ¶ 1002(21)(A). Thus, an insurance company is not a fiduciary when it negotiates the terms of the product that it offers. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 655 (9th Cir. 2019) (affirming dismissal of breach of fiduciary duty claims because insurance company "exercised no discretionary control over the plan's management" when negotiating the terms of policy offered to plan and thus was not acting in a fiduciary capacity). Similarly, collecting insurance premiums (even allegedly excessive premiums) is not a fiduciary act. *Id.* at 659 (holding that "defendants did not exercise control over plan assets when charging or spending the allegedly excessive premiums" and affirming dismissal of fiduciary breach claims "[b]ecause defendants were not exercising a fiduciary function when taking 'the action subject to complaint'") (citation omitted).

Plaintiffs' fiduciary breach claims mainly rely on Prudential's alleged (1) collecting premiums for allegedly illusory coverage (Am. Compl. ¶ 5.16) and (2) "negotiation, issuance, and continued renewal" of life insurance with the aviation exclusion as to the Plan's AD&D coverage.



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

(Am. Compl. ¶ 5.13). Although, as the Court noted in its prior dismissal order (ECF No. 31 at 9), Prudential had discretionary authority over claims for payment of benefits, (*see also* Am. Compl. ¶ 5.4), and thus is allegedly a fiduciary with respect to determination of benefit claims, that does not transform Prudential into a fiduciary for all purposes. *See Pegram*, 530 U.S. at 226. Negotiating and issuing a group life insurance policy occurs *before* an insurance company has any role at all in Plan administration. *Depot*, 915 F.3d at 655. Moreover, negotiation, issuance and renewal of a policy concerns matters of plan design, which are settlor, not fiduciary, in nature. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444, (1999) ("ERISA's fiduciary duty requirement simply is not implicated where Hughes, acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated.").[6] And collecting set premiums involves no discretionary action or plan assets whatsoever. *Id.* at 659; *see also Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 841 (9th Cir. 2018) (a plan "service provider's" collection of "definitively calculable and nondiscretionary compensation … clearly set forth in a contract with the fiduciary-employer … is not a breach of the provider's fiduciary duty"). Thus, Plaintiffs' fiduciary breach claims fail as to these predicate acts.

**2. Plaintiffs do not plausibly allege any fiduciary breaches as to the denial of benefits.**

The remaining fiduciary breach claim—premised on Prudential's denial of the benefit claims—fails because Plaintiffs concede that Prudential followed the Plan as written, and they do not otherwise offer plausible allegations of improper motivation or procedures. As relevant to Plaintiffs' claims, ERISA requires that fiduciaries "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" (the duty of loyalty), act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like

[6] Additionally, Plaintiffs do not allege that Prudential had authority to amend the Plan's terms.



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

character and with like aims" (the duty of prudence), and act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]" (plan adherence duty). 29 U.S.C. § 1104(a)(1)(A), (B), (D).

To establish a breach of the duty of loyalty, plaintiffs must show "that defendants took any actions for the purpose of benefitting themselves or some third party," rather than furthering participants' interests. *Munro v. Univ. of S. Cal.*, No. 2:16-cv-06191-VAP-Ex, 2019 WL 4543115, at *2 (C.D. Cal. Aug. 27, 2019) (citation omitted); *see also Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (affirming dismissal of claim that fiduciaries failed to administer plan for exclusive purpose of benefiting participants "[b]ecause [d]efendants complied with the [p]lan's lawful terms and were under no legal obligation to deviate from those terms"); *Herzfeld v. Teva Pharms. USA, Inc.*, No. 2:18-CV-09784-ODW (SSx), 2020 WL 8175593, at *7 (C.D. Cal. Dec. 14, 2020) (similar). The duty of prudence, conversely, is concerned with process—*i.e.*, whether the fiduciary decision was made using "appropriate methods to investigate" the merits of the decision. *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *4 (N.D. Cal. May 31, 2017) ("prudence analysis focuses on fiduciary's conduct in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment") *aff'd*, 752 F. App'x 453 (9th Cir. 2018) (citations omitted).

Here, Plaintiffs allege (Am. Compl. ¶ 5.4) that Prudential was allegedly a fiduciary as to claim determinations. However, this does not mean that Plaintiffs plausibly allege a *breach*. They plead no facts showing imprudence or disloyalty. Plaintiffs' fiduciary breach claim also fails because Plaintiffs plead no facts whatsoever to suggest that Prudential's benefit decision was based on improper motivations or procedures. Instead, in dismissing Plaintiffs' initial Complaint, the Court construed their fiduciary breach claims "as alleging Defendants breached [their] duties by not acting in accordance with the life insurance policy plan and failing to pay AD&D benefits." (ECF No. 31 at 10 (noting that "Plaintiffs are not clear as to how Defendants breached each of



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

these fiduciary duties") (emphasis omitted)). It then dismissed the claims because Plaintiffs failed to plausibly allege entitlement to benefits. (*Id.*). In other words, the Court has already held that to avoid dismissal as to a fiduciary breach claim premised on failure to pay benefits, Plaintiffs must plausibly allege—at a minimum—an entitlement to the benefits they seek. That is, they would have to plausibly show Prudential violated the plan adherence duty. They have not done so.

Plaintiffs do not (and cannot) dispute that Prudential's denial of AD&D benefit was required under the plain language of the Plan because the loss arose from the decedents performing as airplane pilots. Not only does this conclusion not *violate* ERISA, but the statute also mandates it. The Plan documents required denying the benefit claim and Plaintiffs cite no ERISA provision requiring a different result.[7]

Plaintiffs also allege (Am. Compl. ¶¶ 5.14, 5.16) that Clay Lacy falsely or misleadingly represented its benefit offerings by representing that it offered "fully paid" life insurance and that Prudential was aware of this. But Plaintiffs do not plausibly allege any misrepresentation.

*First*, allegations of fraud or mistake must be pleaded with particularity under Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b) … [a] complaint must include an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Depot*, 915 F.3d at 668. Plaintiffs' Amended Complaint contains no details of the time or place of the alleged misrepresentation by Prudential or Clay Lacy. Nor does it allege who made the alleged misrepresentations.[8]

*Second*, under any pleading standard, Plaintiffs' allegations are implausible. Plaintiffs' misrepresentation theory is based on Clay Lacy's alleged representations about the "life insurance" that it offered; they allege no misrepresentation by Prudential. (Am. Compl. ¶ 5.14). In any event,

---

[7] Plaintiffs allege (Am. Compl. ¶ 5.17) that the exclusion existed because Defendants allegedly placed their own interests ahead of participants' and the Plan's interests, but as noted *supra*, selecting the benefits available under an ERISA plan is a settlor function.

[8] The Amended Complaint alleges a conversation between Prudential and Ms. Aloff *after* the plane crash (Am. Compl. ¶ 4.23) but this has no bearing on Clay Lacy's alleged representations regarding the policy.



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

the basic life insurance coverage provided by the Plan (as distinct from the AD&D coverage) does not contain the exclusion Plaintiffs complain about. (Plan at PRU-000042-45). And even as to the AD&D coverage, Plaintiffs fail to allege how the exclusion makes Clay Lacy's alleged statements misleading. The AD&D provisions of the Plan covered a significant swath of accidents (including, as Plaintiffs concede (Am. Compl. ¶ 4.5) certain airplane accidents where an insured was a passenger)—just not the incident at issue here.

Plaintiffs also allege (Am. Compl. ¶¶ 4.8-4.9, 4.30, 5.16) that no aviation employer ought to be allowed to exclude AD&D "benefits for aviation-related deaths" and that other aviation employers and insurers do not include such exclusions in their policies. But Plaintiffs cite no ERISA or state insurance law provision requiring insurers to take on that particular risk. And for good reason. "Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Spink*, 517 U.S. at 887; *see also Peterson*, 48 F.3d at 411 (rejecting argument that court could "adopt as federal common law a prohibition against exclusions of bypass surgery" in disability insurance policy because "ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court has no authority to draft the substantive content of such plans"); *Noecker*, 2011 WL 13147419, at *7 ("federal court cannot invoke … principles [of unconscionability and public policy] under the guise of federal common law … to regulate the substantive content of welfare plans"). With respect to insured benefits, state insurance law sometimes prescribes terms that can be offered in a plan, but as explained above, California law expressly permits the aviation exclusion. Beyond all this, the alleged representations (and Prudential's knowledge of them) are irrelevant to whether Prudential exercised its fiduciary authority—adjudicating benefit claims—in accordance with its fiduciary duties.[9] Because

[9] Prudential does not concede that its decision applying the unambiguous Plan terms was fiduciary in nature, but recognizes that Ninth Circuit authority is in tension with that position. *King v. Blue Cross & Blue Shield of Illinois*, 871 F.3d 730, 746 (9th Cir. 2017) ("Blue Cross has the authority to grant, deny,



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

Prudential followed the Plan terms as required, Plaintiffs' fiduciary breach claims fail.

**3. Plaintiffs do not plausibly allege co-fiduciary liability.**

Plaintiffs do not plausibly allege any basis to hold Prudential liable for Clay Lacy's alleged breaches. Plaintiffs conclusorily allege (Am. Compl. ¶ 5.19) that even if Prudential did not violate its fiduciary duties, it is liable for Clay Lacy's actions. ERISA authorizes co-fiduciary liability only if a fiduciary (1) "participates knowingly in, or knowingly undertakes to conceal" a breach, (2) commits a fiduciary breach enabling another fiduciary to commit a breach, or (3) has knowledge of a breach and fails to make "reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a). Plaintiffs allege no facts to establish any of these.

Instead, they allege (Am. Compl. ¶¶ 5.13-5.17) that Clay Lacy breached its fiduciary duties by (1) "negotiation, issuance, and continued renewal of a life insurance policy that could never" offer AD&D coverage to pilots employed by an aviation company and (2) allegedly making misleading statements about the Plan benefits. Plaintiffs' allegations fail for multiple reasons.

*First*, as discussed *supra*, Plaintiff has not plausibly alleged that Clay Lacy breached its fiduciary duties. Indeed, Clay Lacy's actions in choosing an insurance plan (including negotiation and renewal) were not fiduciary in nature because determining the extent of Plan benefits to be offered is a settlor function. *E.g.*, *Hughes*, 525 U.S. at 444 ("ERISA's fiduciary duty requirement simply is not implicated where Hughes, acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated."). Additionally, Clay Lacy's alleged statements regarding the Plan were accurate, so they cannot form the basis for a fiduciary breach claim. Accordingly, there can be no co-fiduciary liability.

*Second*, to the extent that Plaintiffs assert claims based on breaches arising before the Plan

---

and review denied claims. Any one of these abilities would be sufficient to confer fiduciary status under ERISA.").



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

purchased the insurance, Prudential was not a Plan fiduciary for any purpose, so it cannot be liable for any breach. 29 U.S.C. § 1109(b) ("No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary[.]").

*Third*, Plaintiffs have not plausibly alleged that Prudential meets any of the elements of § 1105(a). For example, Plaintiffs do not plausibly allege that Prudential participated in, concealed, or had knowledge of *any* breach or enabled Clay Lacy to commit a breach. Indeed, Plaintiffs' allegations regarding issuance and renewal of the policy are based solely on the fact that Prudential sold Clay Lacy an insurance policy with an exclusion approved under California law. ERISA has no substantive requirements as to what risks an insurance policy must cover, so that non-fiduciary conduct was lawful under ERISA. Similarly, as discussed above, Plaintiffs plead no facts showing that Prudential was aware of Clay Lacy's alleged representations regarding the contents of the Plan. Moreover, even if Prudential *had* been aware of the alleged representations (which Plaintiffs fail to allege in the requisite detail), Plaintiffs concede that the Plan booklet expressly set forth the relevant exclusions. Plaintiffs offer no explanation as to any other steps Prudential was required to take to explain the Plan terms.

Thus, Plaintiffs' co-fiduciary liability theory fails.

**4. Plaintiffs lack standing to seek injunctive relief.**

Plaintiffs lack standing to assert their claims for injunctive relief regarding Defendants' future actions in purchasing and selling insurance policies. "A plaintiff must demonstrate constitutional standing separately for each form of relief requested. To seek injunctive relief, Plaintiffs must show a likelihood that they will again be wronged absent an injunction." *Prescott v. Nestle USA, Inc.*, 597 F. Supp. 3d 1377, 1385 (N.D. Cal. 2022) (dismissing claims for injunctive relief), *vacated and remanded on other grounds*, No. 22-15706, 2023 WL 5346039 (9th Cir. Aug. 21, 2023). Plaintiffs seek injunctive relief barring "Defendants from renewing the life insurance policy as currently issued." (Am. Compl. ¶ 5.23; Request for Relief ¶ 5). But Plaintiffs do not



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-4041
(206) 946-4910

plausibly allege any likelihood of future harm. Plaintiffs are the *beneficiaries* of the Plan, but they do not allege that they have any ongoing relationship with Defendants or any aviation employer. Their partners (who were employed by Clay Lacy) are deceased and the Amended Complaint lacks any facts suggesting that they are otherwise connected with an aviation employer. Indeed, the requested injunction expressly seeks relief only as to *other* Clay Lacy employees. (Am. Compl. ¶ 5.23 (seeking injunctive relief "so that that the policy will benefit Clay Lacy employees whose employment involves travel or flight in any vehicles used for aerial navigation"). Because Plaintiffs have not plausibly alleged that they will be injured by Defendants' renewal of the current policy (or any other future activities in purchasing and selling life insurance policies with aviation exclusions), they lack standing to seek injunctive relief.

**Conclusion**

For the foregoing reasons, the Court should dismiss Plaintiffs' claims with prejudice and grant such further relief as the Court deems just and proper.

Respectfully submitted this 17th day of March, 2026.

SEYFARTH SHAW LLP

By: *s/ Lauren Parris Watts*
Lauren Parris Watts, WSBA No. 44064
Email: lpwatts@seyfarth.com
999 Third Avenue, Suite 4700
Seattle, Washington 98104
Phone: (206) 946-4910

I certify that this memorandum contains 5,474 words, in compliance with the Local Civil Rules.

Ian H. Morrison, *pro hac vice*
Jules A. Levenson, *pro hac vice*
Shelley R. Hebert, *pro hac vice*
Email: imorrison@seyfarth.com
Email: jlevenson@seyfarth.com
Email: shebert@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
Phone: (312) 460-5000

*Attorneys for The Prudential Insurance Company of America*

CERTIFICATE OF SERVICE

I hereby certify that on the date below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record:

DATED this 17th day of March, 2026.

*s/Lauren Parris Watts*
Lauren Parris Watts
Seyfarth Shaw LLP
999 Third Avenue, Suite 4700
Seattle, Washington 98104
(206) 946-4910
lpwatts@seyfarth.com